IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

MERRICK JOSE MOORE,

Plaintiff, No. CIV S-04-0871 MCE EFB P

vs.

J. SLOSS, et al.,

Defendants. FINDINGS AND RECOMMENDATIONS

_______________________________/

Plaintiff is a prisoner without counsel suing for alleged civil rights violations. *See* 42 U.S.C. § 1983. His April 30, 2004, complaint claims the following: (1) defendant J. Sloss violated plaintiff's right of access to the courts by destroying documents plaintiff intended to file in court; (2) Sloss retaliated against plaintiff for filing grievances by issuing plaintiff soiled sheets, by having other prison staff use excessive force against plaintiff, and by tampering with plaintiff's legal mail; (3) defendant H. A. Wagner obstructed justice and assisted J. Sloss by delaying the resolution of one of plaintiff's grievances for at least one year; (4) defendant M. D. McDonald failed to transfer plaintiff to a different institution despite knowing that prison staff were retaliating against plaintiff; (5) defendant M. Evans obstructed justice in the administrative appeals process by ruling against plaintiff and finding that the allegation that J. Sloss destroyed his legal papers could not be substantiated; and, (6) Sloss violated plaintiff's right to be free from

cruel and unusual punishment by repeatedly delivering soiled sheets to him. All defendants have moved for summary judgment, and plaintiff has cross-moved for summary judgment. Defendants have failed to file an opposition to the plaintiff's cross-motion.[1] For the reasons explained below, defendants' motion must be granted in part and denied in part and plaintiff's motion must be denied.

## I. Facts

The parties do not dispute that, at all times relevant to this action, plaintiff was a prisoner at High Desert State Prison, that defendants Sloss, Lewis and Wagner worked at HDSP as a guard, a correctional sergeant, and an appeals coordinator, respectively, and that defendant McDonald was the associate warden.

On September 24, 2003, plaintiff filed a grievance against defendant Sloss. Defs.' Mot. for Summ. J., Ex. A, Deposition of Plaintiff ("Pl.'s Dep."), Ex. B. He received no response. Therefore, on October 3, 2003, he made a written inquiry about the status of the grievance. *Id*. On October 7, 2003, defendant Wagner notified plaintiff that insofar as he sought informal review through Sloss, he must discuss the matter with her. Pl.'s Dep., Ex. G. Wagner also explained that there was no record that plaintiff had filed the appeal, and suggested that plaintiff provide additional information about it. *Id.* Therefore, on October 16, 2003, plaintiff submitted another grievance, which included all the allegations made in the earlier grievance which could not be found. He also included new allegations that defendant Sloss had provided him with soiled sheets, Pl.'s Dep., Ex. A, at 11, 13, 16, and that Sloss lost plaintiff's mail, directed that plaintiff be subjected to a humiliating strip search, and spoke to plaintiff in an uncourteous manner. *Id.*, at 25. He requested that Sloss be fired and that there be an investigation of his allegations. *Id.*, at 133-34.

---

[1] In violation of the Local Rule 78-230(m) and the court's earlier procedural order regarding motion practice, defendants failed to file an opposition or statement of non-opposition to plaintiff's motion.

Defendant McDonald was the reviewer on the first formal level of review. On October 28, 2003, he informed plaintiff that the grievance had been reviewed and the allegations investigated, but found that plaintiff's complaint could not be substantiated. Defs' Mot. for Summ. J., Ex. B. Defendant Evans was the reviewer on the second level of review. *Id.* Based on his review of the records and the investigation, Evans concluded that plaintiff's allegations were unsubstantiated. *Id.* The grievance also was denied on the Director's Level of Review. *Id.*, at 115, 119-20.

At deposition, plaintiff testified that within two weeks of filing the October 16, 2003, grievance, Sloss delivered sheets soiled with urine and semen, and on which there were bits of cotton and pubic hair. Pl.'s Dep., at 83, 85, 86. Defendant Sloss does not contest this fact. Prison policy allowed for routine exchange of soiled laundry for clean laundry every four or five days. *Id.*, at 96. To request lost or additional items between those times, a prisoner had to complete paperwork and submit it to prison staff. Plaintiff received soiled sheets on four consecutive laundry days. Pl.'s Dep., at 84, 89. Sloss delivered soiled sheets three times, and another guard, Suzini, delivered them once. *Id.*, at 84. Sloss handed the sheets to Suzini to give to plaintiff, but plaintiff did not hear Sloss direct Suzini to deliver soiled sheets. *Id.* At the moment of delivery, plaintiff could not tell that the sheets were soiled because they were "folded all nice and neat." *Id.*, at 86.

Sloss's first two deliveries included one soiled sheet. *Id.*, at 88-90. At deposition, plaintiff testified that after the first delivery he complained, but Sloss refused to replace the soiled one, stating: "That's all you got coming. Take it or leave it." *Id.*, at 84. Surprisingly, Sloss does not specifically deny this fact, elaborate on or attempt in anyway to explain it.[2] About ten minutes later, plaintiff asked a different guard for a clean sheet, and the guard obtained one for him. Pl.'s Dep., at 86, 87. The next laundry day, according to plaintiff, he turned in the

---

[2] Defendants' Statement of Undisputed Facts merely states, somewhat cavalierly, that Sloss has no role in laundering sheets. She just distributes them. SUF 40.

soiled sheet that Sloss had delivered, but Sloss gave him another soiled sheet. *Id.*, at 89, 96. Plaintiff called the problem to Sloss' attention, but she again refused to exchange the soiled sheet for a clean one. *Id*., at 89.

Plaintiff claims that he told Sloss that he wanted to speak to a supervisor, but she would not let him. *Id.* At that time, he could not ask another guard to give him a clean sheet because no other guards were around. *Id.*, at 90. Plaintiff did not use the dirty sheet. *Id.*, at 92. Plaintiff alleges that in the following days, he asked two other guards to give him a clean sheet, but because of prison policy about laundry deliveries and because Sloss was their superior officer, they refused to assist him. *Id.* He continued to sleep on the clean sheet and did not use the soiled one. *Id*. On the next laundry day, plaintiff turned in only the soiled sheet Sloss had delivered and refused to exchange, not the one on which he slept. *Id.*, at 95. Once again, Sloss gave him a soiled sheet. *Id.* The next laundry day was the last time plaintiff received a soiled sheet. *Id.*, at 96. Plaintiff never slept on any of the soiled sheets that Sloss and Suzini delivered. *Id.*, at 97. He slept on the clean sheet he obtained after the first delivery instead of turning it in on laundry day. *Id.* Plaintiff did not receive sheets in this condition before September of 2003. Pl.'s Dep., at 84.

Again, given the specificity of these allegations, defendants and Sloss in particular, have little to say. Sloss' declaration does not address the alleged conversations and her alleged refusal to replace the dirty sheets with clean ones, and the other specific allegations above. Instead, Sloss submits a declaration in which she says only generally that she never retaliated against plaintiff in any way. Defs.' Mot. for Summ. J., Ex. E, Decl. of Sloss ("Sloss Decl."), ¶ 3.

In November of 2003, plaintiff attempted to file a petition for a writ of habeas corpus in the Lassen County Superior Court. Pl.'s Dep., at 31, 32. The petition claimed that Sloss retaliated against him for filing grievances and violated his right of access to the courts.[3] *Id.*

---

[3] Rather than seeking habeas relief, plaintiff apparently was attempting to initiate a civil rights claim under Section 1983. Plaintiff believed that he was exhausting available state

On at least five occasions, the court refused to file the petition and notified petitioner that the certificate of service was inadequate because he did not appear to have served the respondent. Pl.'s Dep., at 32, 33 & Sloss Decl. The court finally accepted his petition and denied relief. Pl.'s Dep., at 33. Petitioner then sought relief in the appellate court. *Id.*, Ex. C.

Also in 2003, plaintiff was challenging his kidnaping conviction in a habeas action designated Case No. Civ. 00-8232 in the United States District Court for the Central District of California. Pl.'s Dep., at 39, 40; Defs.' Mot. for Summ. J., Ex. D. Plaintiff claims that during the week of September 15, 2003, he delivered to Sloss for mailing to the court a third-amended petition for a writ of habeas corpus, but the court never received it. Pl.'s Dep., at 37, 39, 46-47; Sloss Decl. Plaintiff asserts that Sloss said things like, "You're not the first individual that wrote me up." Pl.'s Dep., at 47. During the week of September 15, 2003, Sloss told plaintiff that his mail would not reach its destination. Pl.'s Dep., at 49. On September 22, 2003, petitioner sought an extension of time to file the third amended petition, which the court granted. Pl.'s Dep., at 39; Defs.' Ex. D at 1, 8. He filed the third amended petition within the time the court granted, and ultimately replied to respondent's answer. Defs.' Ex. D at 9. The magistrate judge found that plaintiff was not entitled to habeas relief, and on April 15, 2005, the case was dismissed. *Id.*, at 12-39; Pl.'s Dep., at 57.

Again, Sloss does not specifically address these allegations. The Sloss declaration simply denies destroying, withholding or in any way mishandling plaintiff's mail. If offers no explanation of what was given to her and what she did with it. The declaration does not address the statement attributed to her. Sloss Decl., ¶¶ 3, 5.

Plaintiff alleges that on some unspecified date, Officers C. Moore and T. Jackson, who are not defendants in this action, attacked plaintiff without provocation. Pl.'s Dep., at 101-02.

////

---

remedies with respect to claims he intended to present to the federal courts. Pl.'s Dep., at 32.

While they attacked him, the guards called him names and accused him of "writing people up." *Id*., at 103. Plaintiff concedes that he has no direct evidence relating this attack to his grievances about Sloss beyond the fact that there was such a grievance and he heard the statement accusing him of writing up "people." *Id*. In her declaration, defendant Sloss denies having asked C. Moore or T. Jackson to "take any action against" plaintiff. Sloss Decl., ¶ 3. Nothing was submitted from Moore or Jackson denying that either made this statement at the time the incident occurred.

At deposition, plaintiff testified that none of Sloss's alleged actions inhibited him from filing administrative grievances. Pl.'s Dep., at 147. Between October 2003 and July 2005, plaintiff filed at least 26 grievances. Defs.' Mot. for Summ. J., Ex. C. Plaintiff does, however, alleges that the actions were taken to retaliate against him for having pursued a grievance.

**II. Summary Judgment Standards**

Summary judgment pursuant to Fed. R. Civ. P. 56(a) avoids unnecessary trials in cases with no disputed material facts. *See Northwest Motorcycle Ass'n v. United States Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). At issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Rule 56 serves to screen the latter cases from those which actually require resolution of genuine disputes over facts material to the outcome of the case; e.g., issues that can only be determined through presentation of testimony and evidence at trial such as credibility determinations of conflicting testimony over dispositive facts.

> In three recent cases, the Supreme Court, by clarifying what the non-moving party must do to withstand a motion for summary judgment, has increased the utility of summary judgment. First, the Court has made clear that if the non-moving party will bear the burden of proof at trial as to an element essential to its case, and that party fails to make a showing sufficient to establish a genuine dispute of fact with respect to the existence of that element, then summary judgment is appropriate. *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). Second, to withstand a motion for summary

> judgment, the non-moving party must show that there are "genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242 (1986) (emphasis added). Finally, if the factual context makes the non-moving party's claim implausible, that party must come forward with more persuasive evidence than would otherwise be necessary to show that there is a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986). No longer can it be argued that *any disagreement* about a material issue of fact precludes the use of summary judgment.

*California Arch. Bldg. Prod. v. Franciscan Ceramics*, 818 F.2d 1466, 1468 (9th Cir.), *cert. denied*, 484 U.S. 1006 (1988) (parallel citations omitted) (emphasis added). In short, there is no "genuine issue as to material fact," if the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Grimes v. City and Country of San Francisco*, 951 F.2d 236, 239 (9th Cir. 1991) (quoting *Celotex*, 477 U.S. at 322).

Thus, to overcome summary judgment an opposing party must show a dispute that is both genuine, and involving a fact that makes a difference in the outcome.[4] Two steps are necessary. First, according to the substantive law, the court must determine what facts are material. Second, in light of the appropriate standard of proof, the court must determine whether material factual disputes require resolution at trial. *Id.*, at 248.

When the opposing party has the burden of proof on a dispositive issue at trial, the moving party need not produce evidence which negates the opponent's claim. *See e.g., Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 885 (1990). The moving party need only point to matters which demonstrate the absence of a genuine material factual issue. *See Celotex v. Cattret*, 477 U.S. 317, 323-24 (1986).

////

---

[4] On April 15, 2005, the court informed plaintiff of the requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure. *See Rand v. Rowland*, 154 F.3d 952, 957 (9th Cir. 1998) (en banc), *cert. denied*, 527 U.S. 1035 (1999), and *Klingele v. Eikenberry*, 849 F.2d 409, 411-12 (9th Cir. 1988).

If the moving party meets its burden, the burden shifts to the opposing party to establish genuine material factual issues. *See Matsushita Elec. Indus. Co.*, 475 U.S. at 586. The opposing party must demonstrate that the disputed facts are material, i.e., facts that might affect the outcome of the suit under the governing law, *see Anderson*, 477 U.S. at 248; *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987), and that disputes are genuine, i.e., the parties' differing versions of the truth require resolution at trial, *see T.W. Elec.*, 809 F.2d at 631. There can be no genuine issue as to any material fact where there is a complete failure of proof as to an essential element of the nonmoving party's case because all other facts are thereby rendered immaterial. *Celotex*, 477 U.S. at 323. The opposing party may not rest upon the pleadings' mere allegations or denials, but must present evidence of specific disputed facts. *See Anderson*, 477 U.S. at 248.[5] Conclusory statements cannot defeat a properly supported summary judgment motion. *See Scott v. Rosenberg*, 702 F.2d 1263, 1271-72 (9th Cir. 1983).

The court does not determine witness credibility. It believes the opposing party's evidence, and draws inferences most favorably for the opposing party. *See Anderson*, 477 U.S. at 249, 255. Inferences, however, are not drawn out of "thin air," and the proponent must adduce evidence of a factual predicate from which to draw inferences. *American Int'l Group, Inc. v. American Int'l Bank*, 926 F.2d 829, 836 (9th Cir. 1991) (Kozinski, J., dissenting) (citing *Celotex*, 477 U.S. at 322).

If reasonable minds could differ on material facts at issue, summary judgment is inappropriate. *See Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995). On the other hand,"[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citation

---

[5] A verified complaint may be used as an affidavit in opposition to the motion. *Schroeder v McDonald*, 55 F. 3d 454, 460 (9th Cir. 1995); *McElyea v. Babbitt*, 833 F.2d 196, 197-98 (9th Cir. 1987) (per curiam).

omitted). In that case, the court must grant summary judgment.

With these standards in mind, it is important to note that plaintiff bears the burden of proof at trial. Thus, where an essential element of a cause of action has been called into question he must present evidence to show that he could actually prevail on that element. To withstand defendant's motion, he may not rest on the mere allegations or denials of his pleadings. He must demonstrate a genuine issue for trial, *Valandingham v. Bojorquez*, 866 F.2d 1135, 1142 (9th Cir. 1989), and he must do so with evidence upon which a fair-minded jury "could return a verdict for [him] on the evidence presented." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248, 252.

**III. Analysis**

"As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* at 248. Here, plaintiff's sues under 42 U.S.C. Section 1983 and the First, Eighth and Fourteenth Amendments. To prove retaliation, plaintiff must show by a preponderance of the evidence that the defendant took some adverse action against plaintiff and that this action was motivated by plaintiff's exercise of a First Amendment right and served no legitimate penological purpose. *See Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2003); *Barnett v. Centoni*, 31 F.3d 813, 815-16 (9th Cir.1994) (per curiam). To prove the denial of access to the courts, he must show by a preponderance of the evidence that defendant denied him some assistance or tool necessary to the presentation to a court of a non-frivolous claim about the conditions, fact or duration of his confinement, and that he was injured thereby. *Lewis v. Casey*, 518 U.S. 343, 351, 354, 356 (1996); *Phillips v. Hust*, 477 F.3d 1070, 1076 (9th Cir. 2007). On his Eighth Amendment claim, plaintiff has the burden of showing by a preponderance of the evidence that the defendant knew of but disregarded an excessive risk to his health or safety. *Wilson v. Seiter*, 501 U.S. 294, 302-03 (1991); *Rhodes v. Chapman*, 452 U.S. 337 (1981). To prevail on his due process claims, plaintiff must demonstrate that he was deprived of a federally protected interest. *See Greenholtz v. Inmates of*

*Nebraska Penal and Correctional Complex*, 442 U.S. 1, 7 (1979). As discussed below, plaintiff has failed to establish a genuine dispute for trial over any material issue.

**A. Obstructed Justice**

As a threshold matter, the court finds that plaintiff's sixth claim fails as a matter of law. He claims that M. Evans "obstructed justice" in the administrative appeals process by finding that plaintiff's allegation that J. Sloss destroyed his legal papers could not be substantiated. The court construes this as a claim that Evans violated plaintiff's right to procedural due process. The Supreme Court has held that to obtain a protectable right an individual must have "a legitimate claim of entitlement to it." *Greenholtz v. Inmates of Nebraska Penal and Correctional Complex*, 442 U.S. 1, 7 (1979). Here, "[t]here is no legitimate claim of entitlement to a [prison] grievance procedure." *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir.), *cert. denied*, 488 U.S. 898 (1988). Therefore, however Evans handled plaintiff's grievance, he could not have violated plaintiff's right to due process, and plaintiff is not entitled to any relief on this claim. Accordingly, this claim must be dismissed.

**B. Access to the Courts**

Plaintiff alleges that Sloss destroyed documents plaintiff intended to file in court, thereby denying him access to the courts. Prisoners have a First and Fourteenth Amendment right of access to the courts. *Lewis v. Casey*, 518 U.S. 343, 346 (1996). This right comprehends "the opportunity to prepare, serve and file whatever pleadings or other documents are necessary or appropriate in order to commence or prosecute court proceedings affecting one's personal liberty. *Id.*, at 384. The right "requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Bounds v. Smith*, 430 U.S. 817, 828 (1977). Success on such a claim requires a plaintiff to demonstrate: (1) loss of a non-frivolous or arguable claim; (2) act or omission by a prison official; (3) injury, i.e., frustration of the litigation; and (4) a remedy that may be awarded as recompense, which is not otherwise

available in a future suit. *Phillips v. Hust*, 477 F.3d 1070, 1076 (9th Cir. 2007). Litigation will be deemed frustrated where there is proof that the prisoner was hindered in his efforts to pursue his legal claim. *Lewis*, 518 U.S. at 351. The fourth element is satisfied where the plaintiff has no independent tort cause of action for the violation of the right. *Phillips*, 477 F.2d at 1079.

Here, there are specific and detailed accusations by plaintiff that he gave to Sloss his petition for a writ of habeas corpus to be mailed to the federal court and that it was never delivered. There seems to be no dispute over this. Morever, there appears to be no dispute that this occurred in the context of a history of plaintiff drawing the ire of prison guards over his filing of grievances. As discussed below regarding the retaliation claim, these circumstances and the specificity of the accusations warrant an explanation, and none has been forthcoming. The absence of a meaningful response is troubling. Indeed, if the facts are as claimed, they provide circumstantial evidence of retaliation. However, the standards applicable to this claim require that plaintiff not only establish that Sloss deliberately did not mail the petition, but that her failure to do so resulted in the plaintiff losing or being unable to pursue his claim. *Lewis*, 518 U.S. at 351. That is a material element to his claim and there is a wholesale failure of proof to establish that element.

Plaintiff received an extension of time from the federal court, and he filed his federal petition within the time given. The court denied relief on the merits and not because of a missed filing date. Therefore, plaintiff cannot satisfy a prerequisite to this cause of action.

With respect to the state habeas petition, the undisputed evidence shows that the court repeatedly returned it because plaintiff did not properly complete the certificate of service. There is no evidence that Sloss did, or failed to do, anything relating to the certificate of service. Absent evidence with respect to the essential element of malfeasance on the part of the defendant, plaintiff simply cannot prevail at to this state petition either.

Where, as here, there is a complete failure of proof as to an essential element of the non-moving party's claim, all other facts are thereby rendered immaterial and the defendant is entitled

to summary judgment on this cause of action. *Celotex*, 477 U.S. at 323. At deposition, plaintiff testified that Sloss threatened that his mail would not reach its destination. Defendant Sloss, on the other hand, generally denies interfering with the delivery an inmate's mail. On this evidence, there is a genuine dispute about whether Sloss threatened to, and in fact did, block plaintiff's legal mail. However, this dispute is not material because it ultimately did not prevent plaintiff from pursuing his claim.

**C. Retaliation**

Plaintiff claims that Sloss retaliated against him for filing a grievance by interfering with his legal mail, by providing him with soiled sheets, and by causing other guards to subject him to a humiliating search and to excessive force. Sloss contends that there is no genuine dispute about whether her actions had a retaliatory motive. There are five elements to a retaliation claim: (1) a state actor took some adverse action against a prisoner; (2) because (3) the prisoner engaged in protected conduct; (4) resulting in the chilling of plaintiff's First Amendment rights; and (5) the action did not reasonably advance a legitimate penological goal. *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2003). To survive summary judgment, plaintiff must submit evidence that prison officials took some action against him "for exercising his constitutional rights and that the retaliatory action does not advance legitimate penological goals." *Barnett v. Centoni*, 31 F.3d 813, 815-16 (9th Cir. 1994) (per curiam). Institutional order and discipline are legitimate penological goals. *Rizzo v. Dawson*, 778 F.2d 527, 532 (9th Cir. 1985). Plaintiff has the burden of establishing a causal connection between the exercise of constitutional rights and the allegedly retaliatory action. *See Pratt v. Rowland*, 65 F.3d 802, 807 (9th Cir.1995).

**1. <u>The Missing Legal Mail</u>**

As discussed above regarding the "access to the court" claim, the court is struck by defendants' surprising failure to specifically deny or otherwise address detailed accusations, which if true, constitute circumstantial evidence of both retaliatory acts and motives. It is undisputed that during the week of September 15, 2003, plaintiff delivered to Sloss a petition for

a writ of habeas corpus to be mailed to the federal court. The court never received this petition. Why the document did not arrive at the court is disputed, but there is a paucity of evidence on that question. At deposition, plaintiff testified that Sloss threatened that his mail would not reach its destination. Sloss, on the other hand explains nothing. Once again, her declaration disappoints. This terse and conclusory document is of no help.

Notwithstanding specific and detailed accusations against her, Sloss' declaration offers only the general and non-specific conclusions that she "never destroyed or mishandled an inmates mail" and "did not retaliate against Moore in any way." Neither her declaration nor defendants' brief clarify the timing of the loss of mail and prior grievances by plaintiff. Sloss does not deny that the mail was handed from the plaintiff to Sloss for mailing to the court. Sloss does not explain what she did with the mail if, in fact, plaintiff handled it to her. Nor does Sloss deny or explain the statements plaintiff attributes to her, notwithstanding the obvious inference of retaliation if she actually made the statements.[6] During the time period that plaintiff claims he delivered the petition to Sloss to mail, Sloss is accused of saying to plaintiff that his mail would not reach its destination and that "[y]ou're not the first individual that wrote me up." Pl.'s Dep., at 47.

It may very well be the case that none of these allegations are true. Plaintiff has testified that they are and he describes, purportedly from his percipient knowledge, statements made to him and acts occurring in his presence. The most compelling feature of Sloss' declaration is what it does not say. It makes no attempt to deny or explain these specific factual allegations. If a jury credits plaintiff's testimony, it quite reasonably could render a verdict for plaintiff on the claim that his mail was deliberately misdirected or lost in retaliation of prior protected activity.

////

[6] The inference grows stronger when considered in combination with the unrefuted allegation that Officers C. Moore and T. Jackson made statements referring to plaintiff "writing people up" during an alleged attack on plaintiff. Pl.'s Dep., at 101-02.

**2. The Soiled Sheets**

Defendants' motion as to the allegation that Sloss retaliated against him by providing soiled sheets suffers the same deficiency. Plaintiff testified that on three occasions, Sloss delivered to him sheets soiled with urine, semen, and pubic hair and repeatedly over several days refused to replace them with clean sheets. Remarkably, Sloss does not specifically contest this testimony. Clearly, the delivery of soiled sheets serves no legitimate penal purpose. Plaintiff accuses Sloss of doing this in retaliation for plaintiff having filed grievances. Other than to state a generalized denial of ever retaliating, Sloss does not address the particulars of this allegation.

Causation may be shown by evidence sufficient for a jury to infer that the defendant's conduct was motivated by the plaintiff's exercise of a protected right. This may consist of direct evidence or of circumstantial evidence, such as a defendant's conduct inconsistent with previous acts and the temporal proximity between the plaintiff's exercise of his right and the allegedly retaliatory conduct. *Bruce v. Ylst*, 351 F.3d 1283, 1288-89 (9th Cir. 2003); *see also Keyser v. Sacramento City Unified School Dist.*, 265 F.3d 741, 751-52 (9th Cir. 2001). The question of causation is murky here for two reasons. First, it is unclear what grievance could have motivated the alleged retaliation. Second, from the record defendants presented little is clear about the sequence of events. With respect to the question of what grievance or grievances motivated Sloss, however, plaintiff has submitted uncontested evidence that he filed a grievance complaining about Sloss on October 16, 2003. Furthermore, it is undisputed that during the week of September 15, 2003, Sloss said things like, "You're not the first individual that wrote me up." Thus, it is reasonable to infer that sometime before September 15, plaintiff filed at least one grievance against Sloss. Apart from not denying the statement, Sloss offers nothing to explain the context in which she made it. These gaping omissions are of no assistance to Sloss in her attempt to avoid trial. A reasonable fact-finder could conclude from plaintiff's unrefuted evidence that he was attempting to notify prison officials about problems with Sloss some time before the September 15, 2003.

With respect to the sequence of events, it is unclear when Sloss began delivering soiled sheets to plaintiff. At deposition, plaintiff testified that Sloss began delivering the soiled sheets within two weeks of plaintiff's having filed the October 16, 2003, grievance. Plaintiff does not specify whether it began two weeks before or after the grievance, but that grievance contains an allegation that Sloss delivered soiled sheets to plaintiff. Accordingly, the deliveries must have begun early in October. Defendant Sloss does not deny the specific allegation that she knew the sheets were soiled at the time of the delivery. Thus, it appears that about two weeks after commenting about plaintiff's having filed grievances about her, Sloss repeatedly delivered soiled sheets to plaintiff. This is adequate for a jury to infer retaliation. If plaintiff's testimony is believed, a reasonable jury could find that the motivating factor behind the delivery of the soiled sheets and the refusals to replace them with clean, sanitary sheets was to retaliate for plaintiff's having filed a grievance.

There is also adequate evidence to defeat summary judgment of the element of a chilling effect. Indeed, it strains credulity to suggest that this could not possibly have "chilled" plaintiff's exercise of his First Amendment right to file a grievance. Defendant relies heavily on the fact that between October 2003 and July 2005, plaintiff filed at least 26 grievances. If his allegations of being provided sheets soiled with urine, semen and pubic hair are true, no doubt he did. This proves nothing as to the chilling effect such an abhorrent response to a grievance has on one's free exercise of the right to file a grievance. A prisoner is not required to demonstrate a total chilling of his First Amendment rights in order to establish a retaliation claim. *Rhodes v. Robinson*, 408 F.3d 559, 568-69 (9th Cir. 2005) (rejecting argument that inmate did not state a claim for relief because he had been able to file inmate grievances and a lawsuit). The retaliation need not have been so effective at curbing a prisoner's First Amendment rights that he was silenced. It is enough that a reasonable person would be discouraged or reasonably apprehensive about filing a future grievance. *Id*. at 569 (destruction of inmate's property and assaults on the inmate enough to chill First Amendment rights and state retaliation claim, even if inmate filed

grievances and a lawsuit).

For these reasons, triable issues of fact remain as to whether plaintiff was delivered soiled sheets, and repeatedly denied clean sheets in retaliation for activity protected under the First Amendment.

**3. <u>The Unprovoked Attack</u>**

Plaintiff claims that an unprovoked attack by C. Moore and T. Jackson was another way that Sloss retaliated against plaintiff. Sloss has submitted plaintiff's deposition testimony that these two officers attacked plaintiff, and while doing so disparaged him for filing grievances. Again, the record submitted is unclear about when these events occurred. However, the unrefuted and unexplained statements attributed to Sloss and these two guards about plaintiff writing people up, and the circumstances such as the timing of the incidents following plaintiff filing a grievance give rise to an inference that these series of acts were, in fact, retaliation for the grievances. With circumstantial evidence supporting such an inference, the lack of clarity here is of no assistance to defendants. Rather, the circumstances presented call out for some explanation to refute the inference of retaliation, but defendants have chosen only to assert generalized denials of retaliation without speaking to the specific facts and statements that were alleged in plaintiff's testimony.

It is also unclear whether the grievances referred to concerned Sloss, or that these officers acted at Sloss' encouragement or behest. Nonetheless, the attacks and the statements are not refuted. Moreover, the incident cannot be viewed in isolation, divorced from the other acts and statements attributed to Sloss. If the allegations regarding the soiled sheets and Sloss' statements showing a retaliatory motive are found to be true, a jury could reasonably infer that the similar statements by the two attacking officers manifesting a retaliatory intent are related and part of a series of retaliatory action against plaintiff for his repeated grievances. Neither can the incident be divorced from the unrefuted claim that Sloss was their superior officer.

////

A triable issue of fact remains as to whether the assault by subordinate officers was in retaliation for plaintiff's First Amendment protected activity.

**D. Due Process Claims Against McDonald and Wagner**

Plaintiff claims that defendant McDonald deprived him of his rights by refusing to transfer plaintiff to a different facility even though plaintiff was suffering retaliation at the hands of McDonald's subordinates. Defendants contend that plaintiff cannot prevail on this claim as a matter of law. To defeat summary judgment on this claim, plaintiff has the burden of proving that he was denied some federally-protected interest. *See Greenholtz,* 442 U.S. at 7. While the Eighth Amendment entitles prisoners to life's minimal necessities, *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981), no federal constitutional provision creates a right to be housed at a particular facility. *See Meachum v. Fano*, 427 U.S. 215, 224 (1976); *Olim v. Wakinekona*, 461 U.S. 238, 245-49 (1983). Accordingly, defendant McDonald is entitled to judgment as a matter of law.

Plaintiff also claims that defendant Wagner delayed the resolution of his grievances for one year in retaliation for plaintiff's having filed a grievance against Sloss. As stated above, plaintiff has no protected interest in a grievance process. *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir.), *cert. denied*, 488 U.S. 898 (1988). Thus, there can be no due process claim against Wagner for the manner in which he processed the grievance. Furthermore, plaintiff produces no evidence that Wagner engaged in any misconduct. It is undisputed that on September 24, 2003, plaintiff submitted a grievance, to which he received no response. It also is undisputed that on October 3, 2003, he submitted a written inquiry about it. Defendant Wagner responded to this inquiry on October 7, 2003, explaining that there was no record of the grievance and suggesting at least two different courses of action. This response corrected the matter, as on October 16, 2003, plaintiff filed another grievance containing the same allegations as the September 24 grievance (plus a few new allegations), and defendant Wagner issued a decision on October 28, 2003. Wagner obviously responded to plaintiff's complaints in less than a year. There is no evidence that plaintiff submitted any other grievance that Wagner was responsible for reviewing.

On this evidence, a reasonable jury could not conclude that Wagner engaged in the act that plaintiff alleges was retaliatory. Accordingly, there is no genuine issue for trial and defendant Wagner is entitled to judgment as a matter of law.

**E. Eighth Amendment**

Plaintiff claims that Sloss subjected him to cruel and unusual punishment in violation of the Eighth Amendment by the repeated delivery of soiled sheets and the refusals to exchange them for clean ones. Sloss contends that plaintiff has not submitted evidence that the sheets created an unsanitary environment in his cell. The argument is cavalier and dismissive of the nature of the allegations here. Whether an Eighth Amendment violation has occurred depends upon the mental state of the defendant together with objective indicia surrounding the condition or suffering showing its relationship to the purpose of imprisonment. *Wilson v. Seiter*, 501 U.S. 294, 302-03 (1991); *Rhodes*, 452 U.S. at 346. When a prisoner challenges the conditions of his confinement, the mental state to be proved is "deliberate indifference." *Wilson*, 501 U.S. at 303. A prison official is deliberately indifferent when he or she knows of a serious need or risk of harm, but fails to take reasonable measures to provide for that need or protect against the risk of harm. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Here, plaintiff alleges that Sloss intentionally provided him with sheets soiled with urine, semen and pubic hair, refused to provide him with clean sheets and influenced her subordinates not to provide him with clean sheets. Sloss does not deny these allegations or adduce any evidence to contest them. Thus, it is not disputed that the sheets were soiled with these substances. Nor is it disputed that Sloss herself made the first three deliveries, and caused a person not named in this action to make the fourth. Again, no defendant denies these facts. Furthermore, Sloss does not deny outright refusing to exchange the soiled sheets for clean ones. Therefore, she knew she caused plaintiff to have unsanitary sheets, and there is a triable issue about whether Sloss was deliberately

////

////

indifferent to plaintiff's need for sanitary bedding.[7] However, this dispute is material only if Sloss' conduct was objectively serious enough to violate the Eighth Amendment.

The Eighth Amendment's prohibition on "cruel and unusual punishments" does not simply prohibit penalties that are grossly disproportionate to the offense. It prohibits "those that transgress today's "'broad and idealistic concepts of dignity, civilized standards, humanity, and decency.'" *Hutto v. Finney*, 437 U.S. 678, 686-87 (1978) (citing *Estelle v. Gamble*, 429 U.S. 97, 102 (1976), quoting *Jackson v. Bishop*, 404 F.2d 571, 579 (8th Cir. 1968)). Thus, "the words of the Amendment are 'not precise,'" and "their scope is not static." *Trop v. Dulles*, 356 U.S. 86, 100-101 (1958). Rather, it "must draw its meaning from the evolving standards of decency that mark the progress of a maturing society." *Id.*, at 101. The Supreme Court repeatedly returns to this very essence of the Eighth Amendment when evaluating its scope in relation to the conditions of a prisoner's confinement. *See, e.g., Hope v. Pelzer*, 536 U.S. 730, 738 (2002); *Farmer v. Brennan*, 511 U.S. 825, 833-34 (1994); *Estelle v. Gamble*, 429 U.S. 97, 103 (1976).

Here, Sloss concedes that severe and prolonged unsanitary conditions can violate the Eighth Amendment, but, citing *Hutto*, 437 U.S. at 686-87, she argues that temporary deprivations of sanitary conditions remain incognizable.[8] Her argument understates the significance of her complete absence of legitimate justification for persistently providing only the contaminated sheets and the sadistic refusal to replace them with clean sheets. Whether the harm from the deliberately unsanitary condition is physical or psychological injury, the statements and actions–which she has not specifically disputed–were carried out for the very purpose of causing suffering as punishment for filing grievances.

---

[7] Neither Sloss nor any other defendant would sleep on those sheets.

[8] It is undisputed that plaintiff received deliveries of soiled sheets on four consecutive laundry days, with the result that plaintiff had a soiled sheet in his cell for about 16 days. On the first occasion, plaintiff was able to exchange one of the sheets for a clean one. On the other occasions, covering a span of 12 days, he testified, that "[e]very time they did a sheet exchange, she was there. So if I turned in two sheets I would get two bad sheets." Pl.'s Dep., at 91, Ex. A.

While harsh conditions can be necessitated and justified by extreme circumstances such as the immediate need to control violent behavior, no such circumstances are offered as justification here. What violates the Eighth Amendment is the infliction of suffering that is "totally without penological justification." *Rhodes*, 452 U.S. at 346. This is the core of the issue addressed here. The evidence presented here, and not specifically refuted by Sloss, would support a finding that these actions were taken and the unsanitary conditions were imposed for the specific and intended purpose to torment and induce psychological harm as a price to be paid for the grievance.

With respect to the objective indicia involving unsanitary conditions, the Ninth Circuit has had occasion to survey the case law, explaining:

> Unquestionably, subjection of a prisoner to lack of sanitation that is severe or prolonged can constitute an infliction of pain within the meaning of the Eighth Amendment. *See, e.g.*, *Gee v. Estes*, 829 F.2d 1005, 1006 (10th Cir.1987) (Eighth Amendment claim established by allegations that prisoner was placed naked in a lice-infested cell with no blankets in below forty-degree temperatures, denied food or served dirty food, and left with his head in excrement while having a seizure); *McCray v. Burrell*, 516 F.2d 357, 366-69 (4th Cir.1974) (prisoner placed naked in bare, concrete, "mental observation" cell with excrement-encrusted pit toilet for 48 hours after he allegedly set fire to his cell; prisoner had no bedding, sink, washing facilities, or personal hygiene items, and he was not seen by a doctor until after he was released), *cert. denied*, 426 U.S. 471 (1976); *Gates v. Collier*, 501 F.2d 1291, 1302 (5th Cir.1974) (punishment of prisoner by confinement in small, dirty cell without light, hygienic materials, adequate food, heat; prisoner also was punished through administration of milk of magnesia); *LaReau v. MacDougall*, 473 F.2d 974, 978 (2d Cir.1972) (prisoner confined for five days in strip cell with only a pit toilet and without light, a sink, or other washing facilities), *cert. denied*, 414 U.S. 878.

*Anderson v. County of Kern*, 45 F.3d 1310, 1314-15 (9th Cir. 1995) (parallel citations omitted). The theme throughout these cases is that the severity and duration of unsanitary conditions and the justification for imposing them are to be considered in the light of contemporary standards of decency in an evolving society. Thus, the court explained in *Anderson* that emergent circumstances can justify imposing temporarily and unavoidably unsanitary conditions to control

violent or suicidal inmates.

> Prison officials have to have some means of controlling violent or self-destructive inmates temporarily until the episode passes, and as the plaintiffs' own expert testified, it is difficult to distinguish between violent, mentally healthy inmates and violent, mentally disturbed ones. Similarly, in an emergency, prison officials are not culpable when they put an inmate who imminently threatens or attempts suicide temporarily in a place where he cannot hurt himself. In light of the safety concerns underlying use of the safety cell, the plaintiffs' evidence is not sufficient to compel an inference that the defendants are "knowingly and unreasonably disregarding an objectively intolerable risk of harm" and will continue to do so in the future.

*Anderson*, 45 F.3d at1315 (citing *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). In *Anderson*, sinks, stand-up toilets, and beds temporarily were deprived to violent inmates who were placed in a "safety cell." The court noted the defendants' justification for those conditions: "[t]he safety cell is admittedly a very severe environment, but it is employed in response to very severe safety concerns. There was ample testimony that some prisoners became so violent and such a danger to themselves that temporary placement in a safety cell was needed in order to deprive the prisoners of all means of harming themselves." *Id*. at 1314. No legitimate penological goal, emergent or otherwise, has been offered here to explain why plaintiff's propensity for filing grievances had to be controlled by furnishing him sheets soiled with urine, semen and pubic hair, even if only for 12 or 16 days.[9]

On the surface, it may seem that plaintiff simply cannot prevail because he managed to avoid sleeping on the sheets Sloss provided. But in the context of prison guards' responsibility for the safety and welfare of prisoners, the Supreme Court has observed that "having stripped [prisoners] of virtually every means of self-protection and foreclosed their access to outside aid,

---

[9] The California Department of Corrections and Rehabilitation has a mechanism for curbing abuses of the administrative appeals system, including limiting the number of appeals a prisoner may file in a given time-frame. *See* Cal. Code Regs. tit. 15, § 3034.4(a) (rule addressing the problem of "excessive filings"). The uncivilized act, repeated on four occasions, of handing a prisoner filthy sheets and refusing laundered replacements was clearly unnecessary and appears calculated to serve only a sadistic purpose.

the government and its officials are not free to let the state of nature take its course." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994).[10] Given Sloss' responsibility to take reasonable measures to ensure sanitary conditions of confinement for prisoners, and the presumption that she does not have the demonstrated proclivities of those in her charge, the indecency of her conduct is glaringly obvious. That plaintiff, through his own ingenuity, surreptitiously withheld one of his own dirty sheets on laundry day so that he could avoid laying in the urine and semen soiled sheets that Sloss provided is not dispositive.

Thus, when a guard acts as Sloss apparently concedes she did here, a plaintiff's ingenuity and attempts to protect himself from the unsanitary conditions foisted upon him cannot be permitted to shield the guard from liability. The inmate is not required to make the Hobson's choice of succumbing completely to Sloss' abuse by sleeping on the sheets in order to obtain redress in a federal court. *See Farmer*, 511 U.S. at 834 (prisoner need not be attacked before filing suit in federal court, but must only "show that he is incarcerated under conditions posing a substantial risk of serious harm).[11] Here, if plaintiff's sworn statement is believed at trial, he actually experienced an Eighth Amendment violation - and attempted to shield himself from the full effect thereof. It cannot credibly be argued that a prisoner, if attacked physically by a guard, could not cover his head in order to protect himself from the blows. Plaintiff's attempt to protect himself from the unsanitary and psychological harms imposed by Sloss does not vitiate the unconstitutionality of her conduct.

////

---

[10] In contrast to the situation in *Farmer*, here it was a guard, not a fellow prisoner, with a "demonstrated proclivit[y] for antisocial criminal and often violent, conduct," *Farmer*, 511 U.S. at 834, who repeatedly delivered the soiled sheets and ensured that clean ones would not be provided.

[11] *See also Rhodes v. Robinson*, 408 F.3d 559, 566-67, 569 (9th Cir. 2005) (noting that, especially in light of the PLRA exhaustion requirement, it would be impossible for prisoners to vindicate their right to be free from retaliation for exercising their constitutional rights if the fact of filing grievances demonstrated that those rights had not been chilled).

Finally, caselaw concerning the use of force is instructive here. Defendants' argument that because the inmate was able, by his own devices, to avoid sleeping in the soiled sheets, suggests that too little harm was done to violate the Eight Amendment. Clearly, harsh conditions of confinement, including the use of force, will not violate the Eighth Amendment if the conditions are "part of the penalty that criminal offenders pay for their offenses against society," *Whitley v. Albers*, 475 U.S. 312, 319 (1986); *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981), and not every "malevolent touch by a prison guard" violates the Eighth Amendment. *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (only uses of force that are sadistic and malicious for the very purpose of causing harm violate the Eighth Amendment). Therefore, "*de minimis* uses of physical force" are not unconstitutional unless they are of a sort that is "repugnant to the conscience of mankind." *Whitley*, 475 U.S. at 327. The acts in question here, while governed by the deliberate indifference standard, are in that sense analogous to the *de minimis* use of force cases involving negligible injury, but yet are of a nature that is simply "repugnant to the conscience of mankind," and violates the notions of decency that mark the progress of a maturing society. The Eighth Amendment is not merely a "time-worn adage[]" or a "hollow shibboleth[]." *Trop*, 356 U.S. at 103. It is part of the original Bill of Rights, which was necessary to convince the states to ratify the Constitution, and has long been considered so fundamental as to be applicable to the states through the Fourteenth Amendment. *See Robinson v. California*, 370 U.S. 660, 666 (1962). A court's function is to enforce the Constitution, and if it does not, "the words of the Constitution become little more than good advice." *Trop*, 356 U.S. at 104.

Providing a prisoner with bedding that is soiled with urine, semen and pubic hair "is simply not part of the penalty that criminal offenders pay for their offenses against society," *Farmer*, 511 U.S. at 834 (quoting, *Rhodes*, 542 U.S. at 342). The acts challenged here fall outside the "standards of decency that mark the progress of a maturing society." *Trop*, 356 U.S. 101.

For these reasons, if a jury concludes that Sloss behaved as alleged, it reasonably could find in plaintiff's favor on his Eighth Amendment claim.

**E. Qualified Immunity**

Defendants also move for summary judgment on the grounds of qualified immunity. There is no need to address qualified immunity with respect to the claims on which the court has resolved the summary judgment in favor of defendants. *See Wilkie v. Robbins*, 127 S.Ct. 2588, 2608 (2007). Thus, the claims that Evans violated plaintiff's rights in how he handled plaintiff's grievances, that Sloss violated plaintiff's right of access to the courts by destroying or diverting documents plaintiff intended to file in the federal and state courts, that McDonald violated plaintiff's rights by refusing to transfer plaintiff to a different facility or that Wagner violated his rights by delaying the resolution of plaintiff's grievances are omitted from this analysis. However, the court must address qualified immunity with respect to plaintiff's claims that defendant Sloss retaliated against him in several respects, and violated his Eighth Amendment rights by persistently denying him bed sheets that were not soiled with urine and semen.

A summary judgment motion based on qualified immunity is analyzed under the ordinary framework established for such motions. *Butler v. San Diego Dist. Attorney's Office*, 370 F.3d 956, 963 (9th Cir. 2004). A defendant who makes a properly supported motion for summary judgment based on the defense of qualified immunity shifts the burden such that plaintiff must produce evidence in opposition. *Butler*, 370 F.3d at 964. Thus, in resolving questions of qualified immunity the court, using the summary judgment standards, must address two prongs to the analysis. First, it must decide whether, taking the undisputed facts in the light most favorable to the non-moving party, it can be said that the officer's conduct violated a constitutional right. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). If, and only if, the court finds a violation of a constitutional right, "the next, sequential step is to ask whether the right was clearly established . . . in light of the specific context of the case." *Id.* Under the law and facts outlined above, defendant Sloss has not shown that she is entitled to qualified immunity on either

claim.

Plaintiff has overcome summary judgment as to the first prong of the analysis. As explained above, there are genuine disputes of material fact about whether Sloss retaliated against plaintiff for filing a grievance by interfering with his legal mail, by providing him with soiled sheets, and by causing other guards to subject him to a humiliating search and to excessive force the amount of force used and the justification therefor, and whether she violated plaintiff's Eighth Amendment rights. As to each of plaintiff's claims, Sloss argues generally that plaintiff cannot adduce evidence of a retaliatory motive but, in fact, plaintiff has. Moreover, Sloss has not specifically controverted plaintiff's sworn statements, which if true, demonstrate retaliation.

As to the second prong, the rights implicated were clearly established and a reasonable correctional officer should have known as much. The defense of qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). The dispositive inquiry is whether it would be clear to a reasonable guard that his or her conduct was unlawful in the situation confronted. *Saucier*, 533 U.S. at 205. It is not necessary that the exact conduct be proscribed at the time of the acts alleged. *Hope v. Pelzer*, 536 U.S. 730, 739 (2002); *Mendoza v. Block*, 27 F.3d 1357 (9th Cir. 1994). Rather, the question is whether the "contours of the right" have been defined at a sufficient level of specificity such that in light of the pre-existing precedent, the unlawfulness of the conduct is apparent. *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

At the time of the events in question, "the prohibition against retaliatory punishment [was] 'clearly established law' in the Ninth Circuit, for qualified immunity purposes." *Pratt v. Rowland*, 65 F.3d 802, 806 (9th Cir.1995). It was also clear that the filing of grievances is a constitutionally protected activity. *See Bruce v. Ylst*, 351 F.3d 1283, 1288 (9th Cir. 2003) (chilling effect on the right to file grievances sufficient to state a claim for retaliation). Sloss does not deny, or explain in any way, plaintiff's allegations that she interfered with his mail or that she repeatedly, intentionally delivered to him obscenely soiled sheets. Nor does she deny or

explain the statements plaintiff alleges she made, which suggest that these acts were motivated by plaintiff's filing grievances about her. Furthermore, she offers nothing in justification for these actions, and the court can glean none from the record. Only the clearly incompetent would have thought that Sloss' actions in the circumstances she faced were lawful. Sloss is not entitled to qualified immunity with respect to plaintiff's retaliation claims.

Sloss' argument as applied to the soiled sheets is even more disturbing. She presses the implausible argument that a reasonable person in her position could have believed her conduct was lawful. Defs.' Mot. for Summ. J., at 11. Yet, as with the rest of her motion, she offers no facts or analysis. Her motion fundamentally fails the test for qualified immunity.

> For a constitutional right to be clearly established, its contours must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful; but it is to say that in the light of pre-existing law the unlawfulness must be apparent.

*Hope v. Pelzer*, 536 U.S. 730, 739 (2002). Thus, "officials can still be on notice that their conduct violates established law even in novel factual circumstances." *Hope*, 536 U.S. at 741. By the time of the events giving rise to this action it was clear that prisoners were entitled to a sanitary cell environment. *See Hoptowit v. Spellman*, 753 F.2d 779, 784 (9th Cir. 1985) (Eighth Amendment violated where prisoner living in squalor denied adequate cell cleaning supplies). It also was clear that various other isolated conditions, such as excessive noise, constant illumination and the denial of access to personal hygiene supplies *without any legitimate penological reason* objectively were serious enough to violate the Eighth Amendment. *Keenan v. Hall*, 83 F.3d 1083, 1090-91 (9th Cir. 1996). The court has found no authority for the proposition that the qualified good faith immunity analysis some how changes if the prisoner, through his own devices and ingenuity, avoided the full extent of the intended harm. It has long been established that the bedrock of the Eighth Amendment is "nothing less than the dignity of man." *Trop*, at 100. Thus, "[w]hile the State has the power to punish, the Amendment stands to

assure that this power be exercised within the limits of civilized standards." *Id.* The suggestion that a reasonably competent prison guard facing the circumstances Sloss confronted would believe that persistently providing sheets soiled with urine, semen, pubic hair and refusing to replace them with cleans sheets is, at its best, unpersuasive. Defendant Sloss is not entitled to qualified immunity.

Accordingly, it is hereby RECOMMENDED that:

1. Defendants' August 4, 2006, motion for summary judgment be granted in part and denied in part as follows:

a. That summary judgment be granted on the following claims:

i. that Evans violated due process in how he handled plaintiff's grievances;

ii. that Sloss violated plaintiff's access to the courts by destroying documents that plaintiff intended to file in the federal and state courts;

iii. that defendant McDonald violated plaintiff's right to due process by refusing to transfer plaintiff to a different facility; and,

iv. that Wagner violated plaintiff's right to due process by delaying the resolution of plaintiff's grievances by one year.

b. That defendants' motion for summary judgment be denied on the following claims:

i. that Sloss retaliated against plaintiff by destroying or mishandling his mail;

ii. that Sloss retaliated against plaintiff by repeatedly supplying him with soiled sheets;

iii. that Sloss retaliated against plaintiff by having C. Moore and T. Jackson make an unprovoked attack on plaintiff; and,

////

iv. That Sloss violated plaintiff's Eighth Amendment rights by supplying plaintiff with soiled sheets, refusing to exchange them for clean ones and preventing others from exchanging them for clean ones.

2. Plaintiff's August 21, 2006, cross-motion for summary judgment be denied; and,

3. Plaintiff be given 30 days to file a pretrial statement and defendants be given 15 days from the date plaintiff files his pretrial statement to file their pretrial statement.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

Dated: March 7, 2008.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE